IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**JOSE DANIEL LAZOS,**

    **Plaintiff,**

    v.                                                                                    **CASE NO. 23-3259-JWL**

**JEFF ZMUDA, et al.,**

    **Defendants.**

**MEMORANDUM AND ORDER**

Plaintiff brings this pro se civil rights complaint under 42 U.S.C. § 1983. Although Plaintiff is currently in custody at the Harvey County Detention Center in Newton, Kansas, his claims arose during his incarceration at the Lansing Correctional Facility in Lansing, Kansas ("LCF"). On December 20, 2023, the Court entered a Memorandum and Order to Show Cause (Doc. 6) ("MOSC") ordering Plaintiff to show cause why his Complaint should not be dismissed for the reasons set forth in the MOSC, or to file an amended complaint to cure the deficiencies. This matter is before the Court for screening Plaintiff's Amended Complaint (Doc. 9). The Court's screening standards are set forth in the Court's MOSC.

**I. Nature of the Matter Before the Court**

Plaintiff alleges that on April 9, 2023, at 5:45 am, Plaintiff was assaulted and stabbed four times by three other inmates at LCF. (Doc. 1, at 7.) After the altercation, Plaintiff went to the clinic to have his wounds treated. *Id*. When the nursing staff finished treating Plaintiff, the Captain on shift was contacted. *Id*. The Captain offered Plaintiff the opportunity to sign a protective custody waiver so that Plaintiff could return to his housing unit in general population. *Id*. Because of his fear that he might be killed in general population, Plaintiff refused to sign the waiver and requested protective custody. *Id*. at 8. The Captain ordered SORT Shannon to cuff Plaintiff and

escort him to the A-2 seg restricted housing unit. Then, while Plaintiff was being escorted out of the clinic, the Captain gave a second order for the Plaintiff to be kept handcuffed and remain cuffed until further orders were given by the Captain. *Id*.

Plaintiff claims that the first order—to have Plaintiff handcuffed while he was escorted to the restrictive housing unit—was standard practice, but the second order for Plaintiff to remain handcuffed until further orders were given was not standard policy procedure. *Id*. Plaintiff alleges that he was not acting inappropriately before or after either order. *Id*. Plaintiff alleges that he was being obedient, non-combative, non-disruptive, and 100% compliant. *Id*.

Plaintiff was locked in a holding cage, with his hands cuffed behind his back, while the Captain and other guards reviewed the facility security camera footage to find the other three inmates that assaulted and stabbed Plaintiff. *Id*. at 9. Plaintiff alleges that once the three inmates were found, they were brought to the A-2 seg restricted housing unit, placed in shower stalls along with empty milk crates to sit on, and the doors were locked to secure the inmates inside. *Id*. Unlike Plaintiff, the three inmates were immediately uncuffed. *Id*. At this point in time, Plaintiff had been held in the cage with his hands cuffed behind his back for approximately one hour and fifteen minutes. *Id*. The other three inmates arrived at 7:30 am and were processed by 9 am and transferred to the A-1 seg restricted housing unit. *Id*.

Plaintiff's cuffs were not removed until around 10:30 am. Plaintiff asked the officers to remove his cuffs on separate occasions, as they walked past the holding cage. *Id*. at 10. During the four hours that the cuffs were on Plaintiff, he pleaded with Officer Kouegu to remove the cuffs because Plaintiff was suffering severe pain. *Id*. Plaintiff's wound on his jaw was also leaking blood and had saturated the front of his white t-shirt. *Id*. Plaintiff alleges that although he cannot recall each and every time that he asked Officers Kouegu, Young, and Collins, to remove his cuffs,

2

every request was denied. *Id*. Plaintiff claims that at times he would call out to the officers as they were sitting at the front desk, requesting removal of his cuffs. *Id*. Plaintiff explained to Officer Collins that Plaintiff had multiple injuries from the altercation and that his shoulders were in severe pain caused from the altercation and from being cuffed for an excessive amount of time. *Id*. Officer Collins would simply refuse to help and walk away. *Id*.

Plaintiff asked CO1 Young to remove the cuffs, and Young responded that he was not in charge and that OIC Kouegu was in charge. *Id*. at 11. Plaintiff asked Young to "please ask him to talk to me about removing the cuffs, because my shoulders are in severe pain and the cut on my jaw is bleeding." *Id*. Young walked to the front desk and a short time later OIC Kouegu approached Plaintiff, asking "what's up man?" *Id*. Plaintiff asked him to remove the cuffs and Kouegu responded that he could not remove the cuffs because the "Captain said to keep you like this." *Id*. Kouegu then agreed to call the Captain to ask if Plaintiff could be uncuffed. *Id*. at 12.

Plaintiff remained standing in the holding cage with his hands cuffed behind his back for approximately four hours until the cuffs were removed around 10:30 am. Plaintiff alleges that his shoulders were severely damaged. *Id*. at 17. Plaintiff alleges a failure to protect in Count I; unconstitutional retaliation in Count II; and excessive force in Count III. *Id*. at 3.

Plaintiff names as defendants: Jesse Howes, LCF Warden; John Doe, LCF Captain; (fnu) Kouegu, LCF Officer in Command; (fnu) Young, LCF CO1; (fnu) Collins, LCF CO. For relief, Plaintiff seeks declaratory relief; compensatory damages in the amount of $120,000; and punitive damages in the amount of $240,000.

## II. DISCUSSION

### A. Excessive Force, Failure to Protect and Retaliation

Plaintiff alleges that Defendants failed to protect him, used excessive force, and were

3

deliberately indifferent. All of Plaintiff's claims appear to be based on the fact that his handcuffs were not removed for over four hours and he was forced to stand without anywhere to sit.

The Eighth Amendment's prohibition against "cruel and unusual punishments" applies to the treatment of inmates by prison officials. *See Whitley v. Albers*, 475 U.S. 312, 319–21 (1986). Prison officials violate inmates' Eighth Amendment rights when they subject them to the "unnecessary and wanton infliction of pain." *Id*. at 319. "[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6–7 (1992) (citation omitted). "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Id*. at 9–10; *see also Mglej v. Gardner*, 974 F.3d 1151, 1170 (10th Cir. 2020) (noting that with regard to claims under the Fourth Amendment, "[i]t is possible for someone to be handcuffed for so long that handcuffing constitutes an unreasonable use of force") (citations omitted).

"[P]rison officials have a duty to 'provide humane conditions of confinement,' including 'tak[ing] reasonable measures to guarantee the safety of . . . inmates.'" *Hooks v. Atoki*, 983 F.3d 1193, 1205 (10th Cir. Dec. 29, 2020)(quoting *Requena v. Roberts*, 893 F.3d 1195, 1214 (10th Cir. 2018) (alteration and omission in original) (quoting *Farmer v. Brennan*, 511 U.S. 825, 833 (1994)).

A claim of deliberate indifference requires a plaintiff to allege "that an official acted (or failed to act) in an objectively unreasonable manner and with subjective awareness of the risk." *Strain v. Regalado*, 977 F.3d 984, 987 (10th Cir. 2020) (noting that "the word deliberate makes a

4

subjective component inherent in the claim"); *see also Hooks*, 983 F.3d at 1205 (citing *Farmer*, 511 U.S. at 844 (explaining that "prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted")).

A defendant's subjective intent is also inherent in the concept of deliberate indifference. *Id*. at 1203. "[A]n official's intent matters not only as to what the official did (or failed to do), but also why the official did it." *Id*. at 1204 (citing *Strain*, 977 F.3d at 993). Plaintiff must "establish that the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Strain*, 977 F.3d at 990 (citations and alteration omitted).

"[I]t is well established that an act in retaliation for the exercise of a constitutionally protected right is actionable under [42 U.S.C.] Section 1983 even if the act, when taken for a different reason, would have been proper." *Smith v. Maschner*, 899 F.2d 940, 947 (10th Cir. 1990) (citations omitted). The Tenth Circuit has held that:

> Government retaliation against a plaintiff for exercising his or her First Amendment rights may be shown by proving the following elements:  (1) that the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct.

*Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007).

However, an "inmate claiming retaliation must allege *specific facts* showing retaliation because of the exercise of the prisoner's constitutional rights." *Fogle v. Pierson*, 435 F.3d 1252, 1264 (10th Cir. 2006) (quotations and citations omitted).  Thus, for this type of claim, "it is

imperative that plaintiff's pleading be factual and not conclusory. Mere allegations of constitutional retaliation will not suffice." *Frazier v. Dubois*, 922 F.2d 560, 562 n. 1 (10th Cir. 1990). "To prevail, a prisoner must show that the challenged actions would not have occurred 'but for' a retaliatory motive." *Baughman v. Saffle*, 24 F. App'x 845, 848 (10th Cir. 2001) (citing *Smith v. Maschner*, 899 F.2d 940, 949–50 (10th Cir. 1990); *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998)).

The Court finds that the proper processing of Plaintiff's Eighth Amendment claims and retaliation claim cannot be achieved without additional information from appropriate KDOC officials. *See Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978); *see also Hall v. Bellmon*, 935 F.2d 1106 (10th Cir. 1991). Accordingly, the Court orders the appropriate KDOC officials to prepare and file a *Martinez* Report. Once the report has been received, the Court can properly screen Plaintiff's claims under 28 U.S.C. § 1915A.

### B. Supervisor Liability and Other Claims

Plaintiff also mentions other claims in passing in his Complaint.[1] He claims that supervisor liability should apply to Warden Jesse Howes because he failed to respond to Plaintiff's grievances and failed to discipline the officers involved. (Doc. 1, at 18.) Plaintiff acknowledges that the Warden was not involved on the day in question, and did not participate or acquiesce in the matter. *Id*. However, Plaintiff takes issue with the Warden not responding to his grievances. *Id*.

An essential element of a civil rights claim against an individual is that person's direct personal participation in the acts or inactions upon which the complaint is based. *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985); *Henry v. Storey*, 658 F.3d 1235, 1241 (10th Cir. 2011)

---

[1] Plaintiff states that his Complaint "stems from": failure to protect; excessive use of force; unconstitutional retaliation; neglect of duty; discrimination; bystander liability; civil conspiracy; due process; conditions of confinement; failure to supervise; deliberate indifference; and intentional infliction of emotional distress. (Doc. 1, at 7.) However, other than the first three, he has not stated these as counts in his Complaint and merely lists them without explanation.

("But § 1983 imposes liability for a defendant's own actions—personal participation in the specific constitutional violation complained of is essential.") (citing *Foote v. Spiegel*, 118 F.3d 1416, 1423–24 (10th Cir. 1997) ("Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation.") (citation omitted)); *Trujillo v. Williams*, 465 F.3d 1210, 1228 (10th Cir. 2006) ("In order for liability to arise under § 1983, a defendant's *direct personal responsibility* for the claimed deprivation . . . must be established.") (emphasis added) (citation omitted)). Conclusory allegations of involvement are not sufficient. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). As a result, a plaintiff is required to name each defendant not only in the caption of the complaint, but again in the body of the complaint and to include in the body a description of the acts taken by each defendant that violated plaintiff's federal constitutional rights.

Mere supervisory status is insufficient to create personal liability. *Duffield v. Jackson*, 545 F.3d 1234, 1239 (10th Cir. 2008) (supervisor status is not sufficient to create § 1983 liability). An official's liability may not be predicated solely upon a theory of respondeat superior. *Rizzo v. Goode*, 423 U.S. 362, 371 (1976); *Gagan v. Norton*, 35 F.3d 1473, 1476 FN4 (10th Cir. 1994), *cert. denied*, 513 U.S. 1183 (1995). A plaintiff alleging supervisory liability must show "(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." *Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010), *cert. denied*, 563 U.S. 960 (2011). "[T]he factors necessary to establish a [supervisor's] § 1983 violation depend upon the constitutional provision at issue,

including the state of mind required to establish a violation of that provision." *Id*. at 1204 (citing *Iqbal*, 129 S. Ct. at 1949); *see also Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) (stating that "a denial of a grievance, by itself without any connection to the violation of constitutional rights alleged by plaintiff, does not establish personal participation under § 1983") (citations omitted); *see also Allen v. Reynolds*, 475 F. App'x 280, 284 (10th Cir. 2012) (notice of dispute given to prison warden does not show his personal participation in unconstitutional conduct). Plaintiff's claims against Warden Howes are dismissed.

To the extent Plaintiff intends to assert additional claims in his Amended Complaint, the claims are denied for the reasons set forth in the Court's MOSC. The Court found that Plaintiff's equal protection claim was subject to dismissal because Plaintiff failed to allege that the other inmates were similarly situated in every material respect. The Court also found that Plaintiff failed to state a constitutional violation based on neglect, bystander liability, and inadequate supervision.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff's claims against Warden Jesse Howes are **dismissed.**

**IT IS FURTHER ORDERED** that**:**

(1) The Court will enter a separate e-service order directing the Clerk of Court to serve Defendants.

(2) The Kansas Department of Corrections ("KDOC") shall submit the *Martinez* Report within **sixty (60) days** following the electronic filing of the Waiver of Service Executed. Upon the filing of that Report, the Court will screen Plaintiff's Amended Complaint. If the Amended Complaint survives screening, the Court will enter a separate order setting an answer deadline. Therefore, any answer deadline provided in the docket entry for the waiver of service is not controlling.

(3) Officials responsible for the operation of LCF are directed to undertake a review of the subject matter of the Amended Complaint:

    a. To ascertain the facts and circumstances;

    b. To consider whether any action can and should be taken by the institution to resolve the subject matter of the Amended Complaint; and

    c. To determine whether other like complaints, whether pending in this Court or elsewhere, are related to this Amended Complaint and should be considered together.

(4) Upon completion of the review, a written report shall be compiled which shall be filed with the Court and served on Plaintiff. If the KDOC officials wish to file any exhibits or portions of the report under seal or without service on Plaintiff, they must file such portions separately from the public report and provisionally under seal, to be followed immediately by a Motion to Seal or Redact Document(s). The KDOC officials are exempt from filing the Notice of Proposed Sealed Record under D. Kan. Rule 5.4.2(b).

(5) Statements of all witnesses shall be in affidavit form. Copies of pertinent rules, regulations, official documents, and, wherever appropriate, the reports of medical or psychiatric examinations shall be included in the written report. Any recordings related to Plaintiff's claims shall also be included.

(6) Authorization is granted to the KDOC officials to interview all witnesses having knowledge of the facts, including Plaintiff.

(7) No motion addressed to the Amended Complaint shall be filed until the *Martinez* Report required herein has been prepared.

(8) Discovery by Plaintiff shall not commence until Plaintiff has received and reviewed any Court-ordered answer or response to the Amended Complaint. This action is exempted from the requirements imposed under Fed. R. Civ. P. 26(a) and 26(f).

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter the KDOC as an interested party on the docket for the limited purpose of preparing the *Martinez* Report ordered herein. Upon the filing of that report, the KDOC may move for termination from this action.

Copies of this order shall be transmitted to Plaintiff, Defendants, counsel for the KDOC, and the Attorney General for the State of Kansas.

**IT IS SO ORDERED**.

**Dated February 26, 2024, in Kansas City, Kansas.**

<u>S/  John W. Lungstrum</u>
**JOHN W. LUNGSTRUM**
**UNITED STATES DISTRICT JUDGE**