# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**JOSE DANIEL LAZOS,**

    **Plaintiff,**

    v.                                **CASE NO. 23-3259-JWL**

**JEFF ZMUDA, et al.,**

    **Defendants.**

## MEMORANDUM AND ORDER

Plaintiff brings this pro se civil rights action under 42 U.S.C. § 1983.  Although at the time of filing Plaintiff was in custody at the Harvey County Detention Center in Newton, Kansas, his claims arose during his incarceration at the Lansing Correctional Facility in Lansing, Kansas ("LCF").  On December 20, 2023, the Court entered a Memorandum and Order to Show Cause (Doc. 6) ("MOSC") ordering Plaintiff to show good cause why his Complaint should not be dismissed for the reasons set forth in the MOSC, or to file an amended complaint to cure the deficiencies.  Plaintiff filed an Amended Complaint (Doc. 9), and on February 26, 2024, the Court entered a Memorandum and Order (Doc. 11) ("M&O") dismissing Plaintiff's claims against Warden Jesse Howes and directing Kansas Department of Corrections ("KDOC") officials to submit a *Martinez* Report.  The M&O provides that "[o]nce the report has been received, the Court can properly screen Plaintiff's claims under 28 U.S.C. § 1915A."  (Doc. 11, at 6.)  The *Martinez* Report (Doc. 18) (the "Report") has now been filed.  The Court's screening standards are set forth in the Court's MOSC.

## I.  Nature of the Matter Before the Court

Plaintiff's allegations are set forth in detail in the Court's M&O.  In summary, Plaintiff alleges that on April 9, 2023, at 5:45 am, Plaintiff was assaulted and stabbed four times by three

other inmates at LCF.  (Doc. 9, at 7.)  After the altercation, Plaintiff went to the clinic to have his wounds treated, then the Captain was contacted and Plaintiff was offered the opportunity to sign a protective custody waiver so that Plaintiff could return to his housing unit in general population. *Id*.  Because of his fear that he might be killed in general population, Plaintiff refused to sign the waiver and requested protective custody.  *Id*. at 8.  The Captain ordered SORT Shannon to cuff Plaintiff, to escort him to the A-2 seg restricted housing unit, and to keep Plaintiff cuffed until further orders were given by the Captain.  *Id*.  Plaintiff alleges that he was being obedient, non-combative, non-disruptive, and 100% compliant.  *Id*.  Plaintiff alleges that the three inmates that assaulted him were processed and uncuffed prior to Plaintiff, even though they arrived at segregation after Plaintiff.  *Id*. at 9.  Plaintiff alleges that his requests to be uncuffed were denied, he remained standing in the holding cage with his hands cuffed behind his back for approximately four hours, and his shoulders were severely damaged.  *Id*. at 10, 17.

Plaintiff names as defendants:  Jesse Howes, LCF Warden; John Doe, LCF Captain; (fnu) Kouegu, LCF Officer in Command;  (fnu) Young, LCF CO1; (fnu) Collins, LCF CO.  For relief, Plaintiff seeks declaratory relief; compensatory damages in the amount of $120,000; and punitive damages in the amount of $240,000.  *Id*. at 20.

## II.  The Report

The Report provides that Plaintiff is no longer incarcerated at LCF, nor is he in KDOC custody.  (Doc. 18, at 3.)  "He entered on March 24, 2023, and left on June 13, 2023."  *Id*.; Exhibit A.  The Report further provides that:

> 1. On April 9[,] 2023, at 05:36am, Lazos was attacked by 3 residents. *See* Exhibit F.
>
> 2. At 05:49am, he entered the clinic and sought medical attention. *Id.*

3. He sustained lacerations measuring 2cm in length on his neck and chin, along with a puncture wound to his right hand. The wounds were cleaned but he refused further treatment. *Id.*

4. As officers began investigating the circumstances surrounding the assault against Lazos, he became aggressive, threatening, and erratic towards medical staff and officers. *Id.* at 4, 9, 10.

5. At 05:58am, Lazos was placed in handcuffs and offered the opportunity to return to his housing unit in general population by signing a protective waiver. However, he refused. *Id.* at 4.

6. At 06:05am, he was placed in a holding cell awaiting a cell to be found for his placement. *Id.*

7. In light of Plaintiff's unusually erratic conduct and his threatening behavior towards officers, Captain Rasmussen ordered that Plaintiff be kept restrained until his placement was found. *See* Exhibit B, ¶ 9.

8. Captain Rasmussen issued those directives, exercising his discretion as a correctional officer, to forestall any escalation in Lazos's behavior that would prompt the necessity to administer a planned use of force, to enforce compliance during the transfer to restrictive housing. *Id.*

9. At 09:24am, he was moved to another holding cell and his restraints were removed. *See* Exhibit F. at 4.

10. At 10:00am he was taken to the clinic for the second time and his wounds were cleaned. *Id.*

11. At 10:47am, Lazos received restrictive housing clearance and was escorted to his new cell. *Id.*

12. Lazos made no complaints to the doctor, nurses, or medical staff, regarding any injuries sustained as a result of being handcuffed, while he was incarcerated. *See* Exhibit G.

13. On June 13, 2023, Lazos was released from LCF. *See* Exhibit A.

*Id.* at 4–5.

The Report provides that Plaintiff was not placed in handcuffs in the holding cell for no reason, but rather due to his demeanor towards officers turning erratic, threatening, and aggressive

as they inquired into the circumstances surrounding his injuries. *Id*. at 5. The Report provides that "[r]elying on Captain Rasmussen's training and experience, it was determined that [Plaintiff] should remain handcuffed until he could be relocated to a cell within restricted housing." *Id*. The Report maintains that Defendants "did not act maliciously nor sadistically for the purpose of causing harm to [Plaintiff] [and,] [i]nstead, [Plaintiff] was handcuffed in good faith to restore discipline while his new cell was being prepared." *Id*. at 6. The Report also states that the lack of any visits or complaints to the doctor, nurses, or any medical personnel regarding an injury sustained while being handcuffed "further suggests that the use of force was *de minimis*." *Id*.

## III. DISCUSSION

In the M&O, the Court dismissed Plaintiff's claims against Warden Howes and ordered a *Martinez* Report on Plaintiff's excessive force, failure to protect, and retaliation claims. The Court also found that to the extent Plaintiff mentions other claims in passing in his Complaint,[1] the claims are denied for the reasons set forth in the Court's MOSC. The Court found in the MOSC that Plaintiff's equal protection claim was subject to dismissal because Plaintiff failed to allege that the other inmates were similarly situated in every material respect. The Court also found that Plaintiff failed to state a constitutional violation based on neglect, bystander liability, and inadequate supervision.

The Court will now screen, in light of the Report, Plaintiff's remaining claims based on excessive force, failure to protect, and retaliation. Plaintiff alleges a failure to protect in Count I; unconstitutional retaliation in Count II; and excessive use of force in Count III. (Doc. 9, at 3–4.) He does not set forth facts surrounding the initial assault or argue that staff failed to protect him

---

[1] Plaintiff states that his Complaint "stems from": failure to protect; excessive use of force; unconstitutional retaliation; neglect of duty; discrimination; bystander liability; civil conspiracy; due process; conditions of confinement; failure to supervise; deliberate indifference; and intentional infliction of emotional distress. (Doc. 9, at 7.) However, other than the first three, he has not stated these as counts in his Complaint and merely lists them without explanation.

regarding the initial assault by the other inmates. He also fails to assert a claim based on his medical care. All of Plaintiff's claims appear to be based on the fact that his handcuffs were not removed for over four hours while he was waiting for his cell in segregation.

### A. Eighth Amendment – Cruel and Unusual Punishment

A prison official violates the Eighth Amendment when two requirements are met. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "First, the deprivation alleged must be, objectively, 'sufficiently serious.'" *Id*. To satisfy the objective component, a prisoner must allege facts showing he or she is "incarcerated under conditions posing a substantial risk of serious harm." *Id.*; *Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005).

The Eighth Amendment requires prison and jail officials to provide humane conditions of confinement guided by "contemporary standards of decency." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). The Supreme Court has acknowledged that the Constitution "'does not mandate comfortable prisons,' and only those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (internal citations omitted). Indeed, prison conditions may be "restrictive and even harsh." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). "Under the Eighth Amendment, (prison) officials must provide humane conditions of confinement by ensuring inmates receive the basic necessities of adequate food, clothing, shelter, and medical care and by taking reasonable measures to guarantee the inmates' safety." *McBride v. Deer*, 240 F.3d 1287, 1291 (10th Cir. 2001) (citation omitted).

The second requirement for an Eighth Amendment violation "follows from the principle that 'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.'" *Farmer*, 511 U.S. at 834. Prison officials must have a "sufficiently culpable state of mind," and

in prison-conditions cases that state of mind is "deliberate indifference" to inmate health or safety. *Id*. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837. "The Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.'" *Id*. It is not enough to establish that the official should have known of the risk of harm. *Id*.

"[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6–7 (1992) (citation omitted). "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Id*. at 9–10.

Plaintiff alleges that on the day of the incident, he "had not violated any facility rule, regulation, or procedure, requiring officers to apply the level of restraint used," and "there is no indication that the Plaintiff acted inappropriately before or after he requested protective custody." (Doc. 9, at 13.) Plaintiff alleges that the officers' actions were a wanton and unnecessary infliction of pain and harm for no legitimate purpose, that there was no disciplinary rationale to justify their actions, and that the actions constituted "an ordinary lack of due care of the Plaintiff's interests of health and safety." *Id*. Plaintiff alleges that due to his injuries suffered in the attack, it was "completely unreasonable to believe that Plaintiff whom requested protective custody was at that time any type of security threat that jeopardized the order and safety of the facility." *Id*. at 14.

Plaintiff alleges that he "lives with a debilitating condition known as neuropathy that causes

6

fibromyalgia that deteriorates muscular health weakening multiple types of tissues, [and] Plaintiff has suffered from this condition since childhood." *Id*. at 16 (cleaned up).  Plaintiff alleges that Defendants severely damaged his shoulders and he now suffers extreme pain when attempting to fulfill basic daily activities and chores. *Id*. at 17.

Plaintiff's medical records do not reflect that he complained of shoulder pain following the incident,[2] although he was seen by medical for other issues, including a sore throat, stomach pain, restless leg syndrome, the need to replace his lost reading glasses, the need for a gluten free diet, and the need for wrist and ankle braces.  He did put in a medical request on April 25, 2023, noting he was handcuffed for more than four hours and "now require[s] front cuff accommodation." (Doc. 19, at 109.)    His May 2, 2023 provider visit notes "musculoskeletal complaints," and provides that he "[r]eports pain in head, neck, and shoulders since March 19th . . . [r]eports he was slammed on his head into concrete ground."  (Doc. 19, at 48.)    Plaintiff did not enter KDOC custody until March 24, 2023.

Hans Rasmussen, LCF Captain, declares that he began his investigation into the stabbing incident by asking Plaintiff "to explain the circumstances surrounding his injuries, but he remained non-compliant [and] [h]is behavior then turned aggressive as [Rasmussen] persisted to question the surrounding events."  (Doc. 18–2, Declaration of Hans Rasmussen, at ¶ 5.)    Rasmussen declares that Plaintiff was handcuffed at 5:58am and taken to a holding cell where he waited to receive clearance to be transferred to his new cell in restrictive housing, and his handcuffs were removed at 9:24am, when he was transferred to a different holding cell.  *Id*. at ¶¶ 8, 10.  Rasmussen

---

[2] The Court notes that there are no medical records for April 9, 2023—the day of the attack—included in Plaintiff's medical records submitted with the Report.  However, as part of the investigation into his property claim, information was received regarding his injuries from Angie Chisham, RN.  *See* Doc. 18–6, at 4.  The nurse noted the 2cm long laceration to the back of his neck on the right side, a laceration to the right side of his chin 2cm long, and a puncture to the top of his right hand.  *Id*.  "The bleeding was stopped but the patient refused any care."  *Id*.

declares that throughout his interaction with Plaintiff that day, "he was aggressive, non-compliant and threatened staff." *Id.* at ¶ 9. Rasmussen therefore "made the decision to keep him handcuffed, anticipating that his behavior would persist, necessitating a planned use of force during his transfer from the holding cell to his new cell in restrictive housing." *Id.*

Although Plaintiff's claims suggest Defendants were negligent, he must show more than negligence to state an Eighth Amendment violation. Claims under § 1983 may not be predicated on mere negligence. *See Vasquez v. Davis*, 882 F.3d 1270, 1277–78 (10th Cir. 2018) (deliberate indifference requires more than negligence) (citing *Farmer v. Brennan*, 511 U.S. 825, 835 (1994)).

Plaintiff has also failed to show that any Defendant knew of and disregarded an excessive risk of harm. A defendant's subjective intent is inherent in the concept of deliberate indifference. *Martinez*, 430 F.3d at 1303. "[A]n official's intent matters not only as to what the official did (or failed to do), but also why the official did it." *Hooks v. Atoki*, 983 F.3d 1193, 1204 (10th Cir. 2020) (citing *Strain v. Regalado*, 977 F.3d 984, 993 (10th Cir. 2020)). Plaintiff must "establish that the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Strain*, 977 F.3d at 990 (citations and alteration omitted). Plaintiff should show good cause why his Eighth Amendment claims should not be dismissed for failure to state a claim.

### B. Retaliation

"[I]t is well established that an act in retaliation for the exercise of a constitutionally protected right is actionable under [42 U.S.C.] Section 1983 even if the act, when taken for a different reason, would have been proper." *Smith v. Maschner*, 899 F.2d 940, 947 (10th Cir. 1990) (citations omitted). The Tenth Circuit has held that:

Government retaliation against a plaintiff for exercising his or her First Amendment rights may be shown by proving the following elements: (1) that the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct.

*Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007).

However, an "inmate claiming retaliation must allege *specific facts* showing retaliation because of the exercise of the prisoner's constitutional rights." *Fogle v. Pierson*, 435 F.3d 1252, 1264 (10th Cir. 2006) (quotations and citations omitted). Thus, for this type of claim, "it is imperative that plaintiff's pleading be factual and not conclusory. Mere allegations of constitutional retaliation will not suffice." *Frazier v. Dubois*, 922 F.2d 560, 562 n. 1 (10th Cir. 1990). "To prevail, a prisoner must show that the challenged actions would not have occurred 'but for' a retaliatory motive." *Baughman v. Saffle*, 24 F. App'x 845, 848 (10th Cir. 2001) (citing *Smith v. Maschner*, 899 F.2d 940, 949–50 (10th Cir. 1990); *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998)).

Plaintiff has failed to allege specific facts showing retaliation by any of the Defendants. Plaintiff should show good cause why his retaliation claim should not be dismissed.

## IV. Response Required

The *Martinez* report developed as a means "to ascertain whether there is a factual as well as a legal basis for [a] prisoner's claims." *Gee v. Estes*, 829 F.2d 1005, 1007 (10th Cir. 1987). The report "is treated like an affidavit, and the court is not authorized to accept the factual findings of the prison investigation when the plaintiff has presented conflicting evidence." *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991) (citing *Sampley v. Ruettgers*, 704 F.2d 491, 493 n. 3 (10th Cir. 1983)). Thus, at this point in the proceedings the Court does not use the Report to resolve

conflicts of fact.  *See Swoboda v. Duback*, 992 F.2d 286, 290 (10th Cir. 1993) ("In determining whether a plaintiff has stated a claim, the district court may not look to the Martinez report, or any other pleading outside the complaint itself, to refute facts specifically pled by a plaintiff, or to resolve factual disputes.").  In light of the Report, the Court is considering dismissal of this matter for failure to state a claim.

Plaintiff will be given an opportunity to respond to the Report and to show good cause why dismissal should not be entered.  Failure to respond by the Court's deadline may result in dismissal of this action without further notice.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff is granted until **July 3, 2024,** in which to respond to the Report at Doc. 18, and to show good cause, in writing to the undersigned, why Plaintiff's remaining claims should not be dismissed for the reasons stated herein.

**IT IS SO ORDERED**.

**Dated June 4, 2024, in Kansas City, Kansas.**

<u>**S/  John W. Lungstrum**</u>
**JOHN W. LUNGSTRUM**
**UNITED STATES DISTRICT JUDGE**